Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J.H., and S.H.,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS LIFE and HEALTH INSURANCE COMPANY, and the SNAP INC. BENEFITS PLAN.<br><br>Defendants. | COMPLAINT<br><br>Case No. 2:22-cv-00431 - DBB |

Plaintiffs J.H. and S.H., through their undersigned counsel, complain and allege against Defendants Anthem Blue Cross Life and Health Insurance Company ("Anthem") and the SNAP Inc., Benefits Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. J.H. and S.H. are natural persons residing in Ventura County, California. J.H. is S.H.'s father.

1

2. Anthem is an independent licensee of the nationwide Blue Cross Association and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). J.H. was a participant in the Plan and S.H. was a beneficiary of the Plan at all relevant times. J.H. and S.H. continue to be participants and beneficiaries of the Plan.

4. S.H. received medical care and treatment at Aspiro Adventure LLC. ("Aspiro") from April 16, 2019, to August 14, 2019. Aspiro is a licensed Outdoor Youth Treatment facility located in Sanpete County, Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Anthem denied claims for payment of S.H.'s medical expenses in connection with her treatment at Aspiro.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Anthem does business in Utah, and the treatment at issue took place in Utah.

8. In addition, J.H. has been informed and reasonably believes that litigating the case outside Utah will likely lead to substantially increased litigation costs for which he will be responsible to pay, which would not be incurred if venue of the case remains in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the

Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### S.H.'s Developmental History and Medical Background

10. When she was in the eighth grade, S.H. was placed on a 504 education plan in an attempt to address her mental health and behavioral problems, which included running away from campus, multiple detentions, and difficulty concentrating due to ADHD.

11. S.H. started seeing a psychiatrist who diagnosed her with a mood dysregulation disorder. S.H.'s psychiatrist expressed concern regarding S.H.'s anxiety and high levels of impulsivity. S.H. started self-harming and expressing thoughts of suicide. S.H. was taken to the hospital and then began attending a partial hospitalization program for about four weeks.

12. S.H. returned to school but once again began having suicidal thoughts. She was admitted to the hospital's inpatient teen psychiatric program and stayed there for ten days. While in treatment, S.H. became very argumentative, was placed on suicide watch, experienced severe mood swings, and attempted to self-harm.

13. S.H. then began attending a therapeutic day school where she had her own therapist and received daily group therapy. S.H. had frequent violent outbursts and often got into fights with other students. She was also frequently placed on one-on-one status.

14. Around the time that she was in the eleventh grade, S.H. moved to California. S.H. started meeting with a new psychiatrist and a new therapist, but continued to struggle with impulsivity, anxiety, depression, and manic behaviors. S.H. began using cigarettes, drugs, and alcohol. S.H. had many run-ins with the police and would often sneak out at night and skip her classes.

15. S.H. got into cars with strangers, continued to self-harm, and continued to threaten to commit suicide. S.H. was admitted to a program in California called Center for Discovery. S.H. was only there for about a month before she was prematurely discharged due to violent and disruptive behavior and was sent to another facility in Utah called Discovery Academy. While she made some progress there, she regressed after about six months, assaulted staff, self-harmed, expressed a desire to commit suicide, and was hospitalized.

**Aspiro**

16. S.H. was admitted to Aspiro on April 16, 2019, following her hospitalization.

17. In a letter dated May 14, 2020, Anthem denied payment for S.H.'s treatment at Aspiro. The letter, signed only by Anthem gave the following justification for the denial:

> This service is excluded or not covered under your plan benefits.
>
> As Stated in your Member Benefit Agreement in the section MEDICAL CARE THAT IS NOT COVERED page 61 it states, No payment will be made under this plan for expenses incurred for or in connection with any of the items below. Wilderness camps. Therefore request for authorization for Mental Health residential level of care has been denied. (emphasis in original)

18. In addition, Anthem sent the Plaintiffs an Explanation of Benefits ("EOB") form dated June 1, 2020, which denied payment under code 001: "This isn't a covered service on your plan."

19. On July 15, 2020, J.H. appealed the denial of payment for S.H.'s treatment. J.H. reminded Anthem that it was obligated to meet certain requirements under ERISA and was required to provide him with a full, fair, and thorough review which took into account all of the information he provided, which utilized appropriately qualified reviewers and disclosed their identities, which gave him the specific reasoning for the determination, which referenced the specific plan provision on which the decision was based, and which gave him the information necessary to perfect the claim.

20. J.H. asked the reviewer to contact Dr. Michael Gass, an expert in the outdoor behavioral health field to answer any questions or resolve any concerns it may have had about wilderness care. He asked Anthem to inform him of any contact with Dr. Gass.

21. J.H. argued that S.H.'s treatment at Aspiro was a covered benefit under the terms of the Plan. He stated that while his insurance policy did contain an exclusion for wilderness camps, it made no attempt to define what a "wilderness camp" was. He argued that Aspiro was a licensed, nationally accredited outdoor behavioral health program with teams of doctors, nurses, social workers, and counselors on staff. J.H. contended that Aspiro was not a non-therapeutic "adventure camp" with no clinical value.

22. J.H. wrote that "simply refusing to cover [S.H.'s] treatment because it was offered in an outdoor environment seems to be completely arbitrary." He reminded Anthem that it was subject to MHPAEA which required it to provide coverage for mental health services "at parity" with comparable medical or surgical benefits.

5

23. J.H. wrote that skilled nursing and inpatient rehabilitation were the appropriate medical or surgical analogues to outdoor behavioral health programs like Aspiro.

24. J.H. alleged that Anthem was applying a limitation to outdoor behavioral health services based solely on the location the treatment took place. He contended that this decision was arbitrary and asked Anthem to conduct a MHPAEA compliance analysis on the Plan and to provide him with physical copies of the results of this analysis in order to ascertain whether or not the Plan was in compliance with MHPAEA. J.H. also requested the governing plan documents under which the Plan was operated.

25. In a letter dated November 16, 2020, Anthem upheld the denial of payment for S.H.'s treatment. The letter gave the following justification for the denial:

> This coordinator reviewed your appeal, along with Anthem utilization management notes. The services were denied correctly as Aspiro Adventures is a wilderness program. According to your January 1, 0219 [sic] SNAP INC. Evidence of Coverage on page 61 under the heading, Medical Care that is Not Covered, it states:
>
> "**Residential accommodations.** Residential accommodations to treat medical or behavioral health conditions, except when provided in a *hospital, hospice, skilled nursing facility* or [sic] *residential treatment center* This [sic] exclusion includes procedures, equipment, services, supplies or charges for the following:
>
> - Domiciliary care provided in a residential institution, treatment center, halfway house, or school because a own home [sic] arrangements are not available or are unsuitable, and consisting chiefly of room and board, even if therapy is included.
> - Care provided or billed by a hotel, health resort, convalescent home, rest home, nursing home or other extended care facility home for the aged, infirmary, school infirmary, institution providing education in special environments, supervised living or halfway house, or any similar facility or institution.
> - Services or care provided or billed by a school, *custodial care* center [sic] for the developmentally disabled, or outward bound programs, even if psychotherapy is included.
> - Wilderness camps."

> The appeal also mentions the criteria cited in the denial from Anthem is not in compliance with the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). From our understanding, the health plan's determination is not a violation of the Parity Act. We do treat residential treatment centers the same as all intermediate levels of care and we are not holding your residential treatment to a stricter standard. Intermediate care treatment locations have the goal to move the member to treatment on an outpatient basis. Residential treatment is not meant for long term care.
>
> Lastly, you made a request for copy [sic] of all documents under which the plan is operated, the certificate of coverage, criteria and guidelines used for the benefits you are seeking and all reports from physicians. We are happy to provide this information and will be mailed [sic] under a separate cover.

26. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

27. The denial of benefits for S.H.'s treatment was a breach of contract and caused J.H. to incur medical expenses that should have been paid by the Plan in an amount totaling over $50,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

28. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

29. Anthem and the Plan failed to provide coverage for S.H.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

30. ERISA also underscores the particular importance of accurate claims processing and

evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

31. Anthem and the agents of the Plan breached their fiduciary duties to S.H. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in S.H.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, and to provide a full and fair review of S.H.'s claims.

32. The actions of Anthem and the Plan in failing to provide coverage for S.H.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

33. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Anthem's fiduciary duties.

34. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

35. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

36. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

37. The medical necessity criteria used by Anthem for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

38. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for S.H.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Anthem exclude or restrict coverage of medical/surgical conditions by imposing restrictions such as the wilderness restriction applied to S.H.'s treatment.

39. When Anthem and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. Anthem and the Plan evaluated S.H.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a

disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

40. J.H. contended that the primary way in which Anthem violated MHPAEA was its blanket exclusion of "wilderness" services. He pointed out that Anthem did not bother to define the term and argued that there was a vast difference between recreational camps which were not designed to have any sort of, or minimal, therapeutic benefit and licensed and accredited facilities like Aspiro which offered clinically proven interventions using licensed, clinical staff.

41. J.H. argued that if S.H.'s treatment had been offered in a traditional residential treatment environment it would have been approved, however Anthem had denied payment for these services based solely on the physical location of the treatment. He argued that Anthem did not discriminate against analogous medical or surgical providers in this manner.

42. The actions of Anthem and the Plan requiring conditions for coverage that do not align with generally accepted standards of care for treatment of mental health and substance use disorders and in requiring accreditation above and beyond the licensing requirements for state law violate MHPAEA because the Plan does not impose similar restrictions and coverage limitations on analogous levels of care for treatment of medical and surgical conditions.

43. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and

more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

44. The violations of MHPAEA by Anthem and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

    (g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

    (h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

45. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for S.H.'s medically necessary treatment at Aspiro under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 28th day of June, 2022.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
Ventura County, California.